Sheldon v. Steamship Uncle Sam.

---

## SHELDON AND WIFE v. STEAMSHIP UNCLE SAM.

HUSBAND and wife cannot recover jointly in an action by them *ex contractu* for the breach of a contract made with defendant for the transportation of the wife from San Francisco to New York.

But if, in such action, no demurrer be interposed, and if the facts stated and proven show that plaintiffs are entitled to relief for fraud practiced by defendant, or for personal injury to the wife, then the action to that extent is well brought; and relief will not be denied on the ground that the same facts would support an action on the contract in which the husband alone can recover.

Husband and wife must join in an action for an injury done to the person of the latter; and it is immaterial that the injury is charged to have been committed in violation of a contract.

Where the breach of a contract is a wrong, the party may sue in tort instead of suing upon the contract.

In an action under the three hundred and seventeenth section of the Practice Act by husband and wife against a steamship for injuries inflicted upon her, plaintiffs cannot recover disbursements or expenditures by the husband. For these he must sue alone.

The liability of the steamship in such case is measured by that of the owners, and extends to the entire injury sustained.

The practice in Courts of Admiralty has no application to actions brought under this section of our statute.

Appeal from the Seventh District.

Action under the three hundred and seventeenth section of the Practice Act for malperformance of a passenger contract.

When the suit was first brought, husband and wife were joined as plaintiffs. Defendant demurred for misjoinder of parties plaintiff. Overruled, and the cause proceeded to trial, in the course of which the plaintiffs moved to amend by striking out the name of the wife. Granted. A verdict was rendered for plaintiff, and was subsequently set aside and a new trial ordered. The cause again came on for trial, the husband alone being plaintiff. After the jury were empanneled, plaintiff moved to amend his complaint by making the wife coplaintiff, which motion was granted, defendant excepting.

The jury returned a special verdict as stated in the opinion of the Court, finding as true the material allegations of the complaint; and also returned a general verdict for plaintiffs, assessing their damages at $5,000. The special verdict fixed the actual expenses incurred by the deviation and detention at Aspinwall at eighty-five dollars, and the amount paid for passage ticket at San Francisco at one hundred and seventy-five dollars.

Plaintiffs asked the Court, in effect, to instruct the jury that if they believed there was fraud in the inception of the contract made by the agents of defendant with plaintiffs, or fraud in the breach thereof, they could give exemplary damages; that, in any event, if the jury believe from the evidence that there was a breach of contract or a malperformance thereof, as between plaintiffs and the agents or owners of defendant, the jury will find a verdict for return of the passage money, which may have been proved to have been paid, and in addition thereto such extra amount of money as has been proved to have been paid out by plaintiff, Catherine Sheldon, during her detention on the Isthmus of Panama; that this is an action in the nature of trespass on the case, etc., and that if the jury believe from the evidence that Mrs. Sheldon was carried to Panama and there exposed, etc., under the circumstances stated in

the complaint, they can find exemplary damages; that if they believe from the evidence that the husband, now plaintiff, heard of the ·deviation of the voyage, and the detention of his wife at Panama, and her suffering and exposure there, and that he suffered great mental anxiety therefrom, he is entitled to recover damages therefor.

These instructions were refused, plaintiffs excepting.

The Court charged the jury as follows, plaintiffs excepting:

" That it does not follow that because an action could be sustained against agent, owner or officer, that they can also recover against the boat. This is a particular form of action—an action on a contract. You will find a verdict in favor of defendant, but it is desirable, because there are other cases, that the facts should be found. You will pass on the several issues submitted to you in writing."

The jury returned a verdict for the defendant, and also returned a special verdict as stated in the opinion.

Plaintiffs' counsel moved for judgment on the special verdict. The motion was denied by the Court, and the denial excepted to by plaintiffs. Defendant moved to set aside the special findings. Motion denied by the Court, defendant excepting. Defendant then moved for judgment on the general verdict, and on such motion· judgment was ordered in favor of defendant for his costs.

Further facts appear in the opinion of the Court. Plaintiffs appeal.

*Whitman & Wells*, for Appellants.

I. This is a suit under the three hundred and seventeenth section of the Practice Act. This statute should be construed liberally. It provides for the enforcement of rights against common carriers, and in no respect changing the principles governing such actions, but merely substituting the additional remedy—a proceeding *in rem*—thereby giving Courts admiralty jurisdiction in this class of cases. The words of the statute make the steamer liable for the "nonperformance or malperformance of a contract for the transportation of persons or property." This is the proposition which the law implies against common carriers, which the pleadings under the old practice were framed to embody. (Angell on Carriers, 491; Edwards on Bail. 577; 2 Chitty Pl. 651, 652; *Averil*

v. *Steamer Hartford*, 2 Cal. 308 ; *Taylor* v. *Columbia*, 5 Id. 268 ; *Warner* v. *Uncle Sam*, 9 Id. 697 ; *White* v. *Steam Tug Mary Ann*, 6 Id. 462.)

In the latter case the Court rule that the provisions of the section under construction are remedial, entitled to a liberal construction, and in aid of actions against common carriers. This being the case, the contract must hold a subordinate position in pleadings and proofs, or to state it more correctly, need only be set forth by way of inducement.

It is immaterial whether this be considered an action on the contract, or on the case. The three hundred and seventeenth section of the Practice Act embraces both. The liability of defendant is not limited to anything less than the legal damages to which plaintiffs are entitled. When the violation of a contract is wanton and malicious, exemplary damages may be given ; if the breach of the contract amounts to a wrong, damages may be recovered for the wrong without reference to the contract as such. (1 Hilliard on Torts, 3, 4 & note ; *Morse* v. *Auburn and S. R. R. Co.*, 10 Barb. 621 ; 2 Greenl. on Ev. sec. 267 ; 1 Chitty's Pl. 390, 391 ; *West* v. *Jenkins*, 14 Johns. 352 ; *Dain* v. *Wycoff*, 3 Seld. 191 ; *Wardrobe* v. *Cal. Stage Co.*, 7 Cal. 118 ; *Fairchild* v. *Same*, 13 Id. 500 ; *Thorn* v. *Same*, 6 Id. 232 ; The Amiable Nancy, 3 Wheat. 546 ; 2 Parsons on Cont. 445.)

II.   The Court erred in charging the jury that, because an action might be sustained against the owners, agents or officers, it did not follow that plaintiffs could also recover against the steamship. The statute gives the same remedy in either case.

III.   The Court also erred in charging that this action under the three hundred and seventeenth section of the Practice Act is a particular form of action, to wit: an action on a contract.

IV.   Plaintiffs were entitled to judgment on the special verdict. The special controls the general verdict. (Pr. Act, sec. 175.)

V.   If the wife is without remedy in this action, still judgment should be rendered for plaintiffs for the passage money—one hundred and seventy-five dollars, and the expense incurred by detention fixed by the jury at eighty-five dollars.

*D. Lake*, for Respondent.

I.   No cause of action against the vessel is stated in the complaint.   The complaint is upon a contract to transport the wife of Sheldon from San Francisco to New York by the Nicaragua route. That is to say, they, the said owners and agents, agreed to transport the said Catherine Sheldon, on the said steamer Uncle Sam, which was to sail on the fifth of April, 1856, from San Francisco aforesaid to the port of San Juan del Sur, in the republic of Nicaragua, and thence to transport her over the Isthmus of Nicaragua to the port of San Juan del Norte, and thence to transport her in a suitable steamer owned by said company, without delay, to the port of New York aforesaid.   This is the contract sued on.

The complaint then proceeds—" and plaintiffs charge a nonperformance of said contract," and aver that said Catherine was not taken to San Juan, but was taken to New York by the way of Panama " in violation of said contract," and the damages claimed are for injuries sustained, not by reason of not being taken to San Juan, but by being taken to New York by way of Panama and Aspinwall.

Now the question is whether the Uncle Sam is liable *in rem* on this contract; and we insist that she is not.   The statute under which this action is maintainable, if at all, provides that " all steamers, vessels and boats shall be liable for nonperformance or malperformance of any contract for transportation of persons or property made by their respective owners, masters, agents or consignees." (Prac. Act, sec. 317.)

This statute means to provide that a contract made by the agent or owner for a service to be performed by the vessel is to be deemed the contract of the vessel, and for a failure of the vessel to perform the service which her owners have undertaken she shall perform, the vessel is made liable *in specie*.   The vessel in effect is hypothecated for the performance of her engagements, and a lien is given for any damages resulting from a failure of performance enforceable by action against the vessel *in rem*.

The argument on the other side must be that the Uncle Sam is liable for a breach of the entire passenger contract, because her owners happen to be the persons who made the contract.   Then if the owners of a mule train in the mountains or a line of stage coaches happen to own a steamboat, the steamboat would be liable for any breach of

contract in the carrying business of the mule train or stage coaches.

The most that has ever been claimed under this statute is, that it gives the State Courts something analogous to the jurisdiction of Courts of Admiralty. Doubtless that is what was intended; not that the proceedings were intended to be the same, but the ends to be attained the same. In Courts of Admiralty it has never been claimed that one vessel was liable for the default of another, nor can an action in the Admiralty be maintained at all on a contract where a portion of it was to be performed on land.

II. If there can be any recovery on the pleadings, still the judgment, on the general verdict for the defendant, should stand.

The evidence did not support the complaint. The complaint alleged a promise to the plaintiffs—husband and wife; the evidence showed a promise to the husband. (1 Chitty's Pl. 29; *Thorne* v. *Dillingham*, 1 Denio, 254.) And the Judge's charge to find a verdict for the defendant was based on this failure of proof. In this view of the case the special findings were immaterial.

III. It was error in the Court to submit the special questions to the jury.

These questions pointed to two distinct views of the case. 1st. That it was competent to inquire into the motives of the promissor in making the contract, by way of enhancing the damages for a breach of it. 2d. That it was competent to inquire into his motive in committing the breach as well as the mode and manner of the breach.

So far at least as the first proposition is concerned it is not debatable. If the contract is affirmed, as of course it is when it is made the foundation of an action, then it cannot be competent to show fraud in making it.

And it is equally clear that it is not competent to show a fraudulent breach. It may be difficult in many cases—such, for instance, as ill treatment of a passenger in not supplying wholesome food, amounting to a breach of the contract—to fix the measure of damages. In such case it must necessarily be left to the sound discretion of a jury. But there is no such charge in this case, for it is absurd to say that this defendant is liable for any accidental discomfort or ill usage suffered at Aspinwall, if indeed there was any.

IV. If there can be any recovery, it can be only on the verdict for eighty-five dollars.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action brought under the provisions of the three hundred and seventeenth section of the Practice Act, to recover damages for the malperformance of a contract made with the Accessory Transit Company of Nicaragua, to convey Catherine Sheldon, wife of James Sheldon, from San Francisco to New York, by what was known as the Nicaragua route. This company were the owners of a number of steamships engaged as common carriers in the transportation of persons and property, for hire, between those points, and the contract provided for the conveyance of Mrs. Sheldon from San Francisco to San Juan del Sur, in Nicaragua, and thence by the usual route to her destination at New York. The defendant was one of the steamships belonging to and employed for these purposes by the company, and was designated in the contract as the vessel to be used in the voyage from San Francisco to San Juan del Sur. The contract was made in April, 1856, and a short time previous thereto the company were in possession, and had the exclusive control, under a charter from the Government of Nicaragua, of the transit across the Isthmus upon that route. When the contract was entered into, however, this charter had been annulled, and the company and their agents were fully advised of that fact, and knew that the contract could not be carried out. With this knowledge in their possession, they had published in the newspapers a notice upon the subject, the object and effect of which were to mislead the public; and it is averred, and the jury expressly find, that the plaintiffs were deceived thereby into making the contract. The facts were not communicated until after the departure of the defendant from San Francisco, and the company were so situated that the passengers were compelled to submit to the imposition which had been practiced upon them. It was then announced that the defendant, instead of stopping at San Juan del Sur, would proceed to Panama, in New Granada, and the passengers were assured that upon crossing the Isthmus to Aspinwall, they would be taken on board by a steamer and carried without delay to New York. When these assurances were given, no means of transportation beyond

Aspinwall had been provided, and in giving them the company must have been actuated by a deliberate purpose of deception. The complaint charges, and the jury find, that Mrs. Sheldon was taken to Panama without her consent, or that of her husband; that she was compelled to disembark in an open boat during a severe rain, and was transported to Aspinwall by railroad in a coal car; that she was detained at Aspinwall seventeen days, during which period she was abandoned by the company, and left without protection or assistance; that the food and accommodations at Aspinwall were bad, and the climate unhealthy; that the acts complained of were committed in a spirit of recklessness, and from wanton and malicious motives.

The facts were found specially; but the jury, under the direction of the Court, rendered a general verdict for the defendant. In support of this verdict two grounds are relied on: first, that the plaintiffs count upon the contract, and cannot therefore recover in a joint action; and second, that the defendant is not liable under the statute.

We agree that the plaintiffs cannot recover jointly in an action *ex contractu* for a breach of the contract; but this does not appear to us to be a sufficient answer to a recovery in the present case. No demurrer having been interposed, the question is whether upon the facts stated the plaintiffs are entitled to any relief; for if they are, the action to that extent is well brought, and such relief cannot be denied upon the ground that the same facts are sufficient to support an action in which one of the plaintiffs only can recover. It is well settled that for an injury done to the person of a married woman she must join in the action; and it is immaterial that the injury is charged to have been committed in violation of a contract. If the act producing the injury be in itself tortious, it may be so treated for all remedial purposes; and it would be absurd to hold that because the wrong done amounts to the breach of a contract, it is therefore purged of its tortious character. "A promise and a tort," says Hilliard, "may be coincident, giving to the party injured by the breach of the promise a remedy as for a simple wrong, without reference to the accompanying contract as such. In other words, the breach of a contract may be a wrong, in respect of which the

party injured may sue in tort, instead of suing upon the contract."
(1 Hilliard on Torts, 3.) The cases in which this principle has
been applied are very numerous, and the subject is so familiar to
the profession that we do not propose to extend our examination of
it beyond a reference to a few of these cases. In *Ives* v. *Carter*
(24 Conn. 392) the plaintiff had been induced by fraudulent repre-
sentations to enter into a contract, which was subsequently broken.
The question was, whether the plaintiff could sue in tort for the
fraud, or was compelled to seek relief by an action upon the con-
tract. The Court said: " In a case thus situated, it appears to us
that the party may have his election to sue either upon the con-
tract, or for the fraud ; and in either case, so long as it appears
that the party is entitled to the remedy he has selected, it can be
no objection that he was also entitled to another remedy." In
*Cary* v. *Hotaling* (1 Hill, 311) it was held that a fraudulent
vendee of goods might be charged in assumpsit for the price, or in
trespass, at the pleasure of the vendor. In *Donnell* v. *Jones* (13
Ala. 490) an action in tort was maintained for the wrongful and
malicious suing out of an attachment, although the plaintiff might
have proceeded upon the attachment bond.

There is no doubt that the injuries inflicted upon Mrs. Sheldon
are the proper subjects of an action. The treatment to which she
was subjected upon her arrival at Panama, and the fraud and impo-
sition which had been practised upon her, make out a gross and
palpable wrong. For this wrong the law entitles her to compensa-
tion in damages, and these damages can only be recovered in an
action to which she is a party. The case in this respect must be
determined by the rules of the common law, and if she were not a
party we should be compelled to hold that damages of this nature
could not be recovered. We have but one form of action, and but
one set of rules to govern us in determining by and against whom
the action is to be prosecuted ; and in all cases where the statute
is silent the common law furnishes the rule of decision. " The
husband and wife," says Chitty, " must join if the action be brought
for the personal suffering of or injury to the wife ; " and this is the
settled rule of the common law upon that subject. The right of
recovery does not extend, however, to any matter for which the

husband should sue alone ; and in the present case the plaintiffs are not entitled to damages on account of disbursements or expenditures by the husband. The idea that the practice in this class of cases is to be assimilated to that prevailing in Courts of Admiralty, has no foundation in the statute.

There is nothing in the point relating to the liability of the defendant. She was the efficient instrument in the violation of the contract, and it is impossible to measure her liability otherwise than by that of the company. She is undoubtedly liable to some extent, and any effort to limit that liability to anything short of the entire injury sustained will be found to be impracticable.

Judgment reversed, and cause remanded for a new trial.