WILLIAMS ET AL. *v.* GRAFF

[No. 82, October Term, 1949.]

518

*Decided February 10, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William F. McDonald* and *J. Elmer Weisheit, Jr.*, with whom was *Michael Paul Smith* on the brief, for the appellant.

*John Grason Turnbull*, with whom were *Foster H. Fanseen* and *Walter B. Siwinski* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was entered in the Circuit Court for Baltimore County by Cyrus Williams, a garbage collector, to recover for personal injuries which he sustained when he was knocked down by a taxicab owned by Theodore Edward Graff, of Dundalk, and operated by his employee on the Sparrows Point Road.

The accident happened on January 24, 1947, about 10 a.m. Plaintiff, an employee of Joseph B. Menser, collector of garbage and trash for Baltimore County, was collecting garbage along the highway. The garbage truck was parked on the south side of the road approximately 100 feet west of McComas Avenue. Plaintiff had just handed a can of garbage to Menser, who was standing on top of the truck, and had received back the empty can. He then came out from behind the truck and started to cross the road with the can, but was struck and thrown for a considerable distance by the taxicab, which was traveling westwardly.

The case was removed to the Superior Court of Baltimore City. Plaintiff testified at the trial in that Court

that he had taken only a step or two when the taxicab bore down upon him. According to his version, the taxicab was traveling on the south side of the white line in the middle of the road. On the contrary, John Royston, defendant's driver, testified that he was driving on the north side of the road. Officer Frank Saraka, of the Baltimore County Police Department, who investigated the accident, testified that he saw skid marks north of the center line.

The jury rendered a verdict in favor of defendant. Plaintiff appealed here from the judgment entered upon the verdict. Plaintiff contends that the trial judge committed reversible error in admitting Officer Saraka's testimony as to the skid marks on the highway.

It is beyond question that, if the testimony of Officer Saraka as to the skid marks was admissible under our rules of evidence, it was also relevant and material to the issue of negligence. One of the rules of the road laid down by the Legislature in the Motor Vehicle Act requires that upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: (1) when overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement; (2) when the right half of a roadway is closed to traffic while under construction or repair; (3) upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or (4) upon a roadway designated and a sign posted for one-way traffic. Laws of 1943, ch. 1007, Code Supp. 1947, art. 66½, sec. 162. In *Crunkilton v. Hook*, 185 Md. 1, 4, 42 A. 2d 517, 519, this Court held that while a driver of a motor vehicle who violates the statutory rule requiring a motorist to keep to the right of the center of the road may not necessarily be negligent, his action is strong evidence of negligence where such violation directly and proximately causes a collision, and the burden is then on him to show that the condition of the road or an emergency in the traffic had caused him to be rightfully on the left side of the road.

We first consider plaintiff's contention that the testimony of the police officer as to skid marks was erroneously admitted on cross-examination because skid marks had not been inquired into on his direct examination. In this country the decisions are not harmonious as to the limits of cross-examination, the conflict having resulted in the pronouncement of two major principles known as the English rule and the American rule. According to the English rule, where a witness is called to testify to a particular fact, he becomes a witness for all purposes and may be fully cross-examined upon all matters material to the issue, the examination not being confined to the matters that were inquired about in the direct examination. This practice has been followed in only a few jurisdictions. *Cowart v. Strickland,* 149 Ga. 397, 100 S. E. 447, 7 A. L. R. 1110. On the other hand, the rule followed in nearly all of the States, including Maryland, is that where a witness is called to testify on a particular point, the adverse party in the cross-examination of the witness is restricted to the point on which he testified and cannot question him in regard to other issues in the case. Of course, a party may ask questions on cross-examination to show bias or prejudice in the witness, or to lay a foundation to admit evidence of prior contradictory statements. But if the party wishes to examine the witness as to other matters, he must do so by making him his own witness and calling his as such in the subsequent progress of the case. *Philadelphia & T. Ry. Co. v. Stimpson,* 14 Pet. 448, 461, 10 L. Ed. 535; *Wills v. Russell,* 100 U. S. 621, 25 L. Ed. 607.

However, our rule does not go to the extent of restricting the cross-examination of the witness to the specific details inquired into on direct examination, but permits full inquiry into the subject matter entered into. Where a general subject has been entered upon in the examination in chief, the cross-examining counsel may ask any relevant question on the general subject. In our judgment the rule limiting cross-examination to the general facts stated on direct examination should not

be so applied as to defeat the real object of cross-examination, i.e., to elicit all the facts of any observation or transaction which has not been fully explained. *Black v. First National Bank of Westminster,* 96 Md. 399, 424, 54 A. 88; *Mutual Fire Insurance Co. v. Ritter,* 113 Md. 163, 177, 77 A. 388; *Commercial State Bank v. Moore,* 8 Cir., 227 F. 19, 23. The scope to which the cross-examination may extend rests largely in the discretion of the trial judge, and his ruling thereon will not be disturbed by the Court of Appeals, unless it appears that some injustice has been done. *Regester v. Regester,* 104 Md. 1, 13, 64 A. 286; *Consolidated Gas, Electric Light & Power Co. v. State,* to Use of Smith, 109 Md. 186, 72 A. 651; *Marino v. State,* 171 Md. 104, 187 A. 858; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111.

In the Court below the police officer who investigated the accident testified on direct examination as to his observations at the scene of the accident, including a pool of blood on the road. It is clear that, after he had been examined in chief in reference to one detail of his observation, it was permissible to cross-examine him in reference to another detail of his observation at the same location.

The second ground of objection to the testimony as to skid marks is that they were not sufficiently identified as having been made by the tires of defendant's taxicab. Officer Saraka, who was stationed at Edgemere Police Station, testified that he received the call to come to the scene of the accident at about 10 a.m. He answered the call promptly. He testified that before he arrived on the scene, the taxicab driver had left and had taken the injured man to the Sparrows Point Hospital. But the garbage truck was still parked along the side of the road. This unmistakably indicated where the pedestrian had attempted to cross the road. On the north side of the road the officer saw the skid marks, and about 16 feet to the west on the south side of the road he saw the pool of blood. After making these observations, he went to the hospital to see the injured man. He also

notified the taxicab driver to come to the police station. It was about one hour after the accident that he talked with the driver at the station and saw the taxicab for the first time. He informed the driver that he saw tire marks on the road, and the driver said that he had tried to stop suddenly and that the marks, which the officer described, were from the tires of his taxicab. Plaintiff moved to strike out the testimony as to the skid marks. The motion was overruled.

There is no question of the general rule that testimony as to tire tracks made by a motor vehicle on a roadway is admissible in an action for damages where the witness had an opportunity to make an observation of the tracks before any change in them had taken place. *Opecello v. Meads*, 152 Md. 29, 38, 135 A. 488, 50 A. L. R. 1385. Of course, testimony as to tire marks made by a car on a roadway should not be admitted unless it can be reasonably inferred from the time of the observation, or from the relative locations of the marks and the car, or from other convincing facts, that the marks had actually been made by the car. *Sheer v. Rathje*, 174 Md. 79, 83, 197 A. 613; *Gloyd v. Wills*, 180 Md. 161, 166, 23 A. 2d 665. It must be realized, however, that not all identifications of tire marks can be as absolutely certain as that in *Lange v. Affleck*, 160 Md. 695, 155 A. 150, 79 A. L. R. 1274, where the witness saw the collision and immediately afterwards observed the marks made by the car; or as that in *Cumberland & Westernport Transit Co. v. Metz*, 158 Md. 424, 452, 149 A. 4, 16, where the witness, although arriving on the scene after the accident, saw the tracks extending "right up to the bus," and thus it was evident that, since the bus had not been moved, no other bus could have made the tracks. The testimony of a witness as to tire marks is not rendered inadmissible by the fact that the vehicle by which they had been made had been moved before the witness arrived.

In *Tomasko v. Raucci*, 113 Conn. 274, 155 A. 64, the Court admitted the testimony of two police officers as to a mark on the road that had been observed by one

of the officers about one hour after the accident, and by the other not until the following morning.

In *Meier v. Wagner,* 27 Cal. App. 579, 150 P. 797, the Court admitted the testimony of a witness that on the morning following an automobile accident he visited the place where it occurred and found alongside a trail of blood the imprint of a wheel made under restraint of brakes applied thereto.

In *Bowker v. Illinois Electric Co.,* 112 Cal. App. 740, 297 P. 615, a witness, who visited the scene of an accident on the morning following its occurrence, was allowed to testify as to certain marks apparently made by automobile tires when the brakes were applied to the wheels.

In *Flach v. Fikes,* 204 Cal. 329, 267 P. 1079, 1080, 1081, the witnesses, who observed skid marks on a business street were not at the scene of the accident until four or five hours after the accident happened, but nevertheless the Court held that the testimony was properly admitted. In explaining that the objection to the testimony would go more to the weight of the evidence than to its materiality, the Court said: "While the street was one of the business streets of said city, the evidence shows that there had been no great amount of travel thereon between the time of the collision and the time when these witnesses observed the skid marks on the street."

In *Grossnickle v. Avery,* 96 Ind. App. 479, 152 N. E. 288, the Court held that a witness was competent to testify that he saw skid marks which it might be inferred from the evidence were made by the defendant's automobile. The Court said that the fact that the witness did not see the collision did not render him incompetent to describe what he saw in the way of marks on the pavement, but that this testimony was proper as tending to show whether defendant was north or south of the center of the street.

In *Stutzman v. Younkerman,* 204 Iowa 1162, 216 N. W. 627, the admission of testimony as to wheel tracks in mud along a curb observed about five hours after an

accident was not erroneous, inasmuch as it was undisputed that there was mud along the curb and the defendant ran through it into the curb.

In *Still v. Swanson,* 175 Wash. 553, 27 P. 2d 704, the Court held admissible the testimony of two witnesses as to skid marks at the place of an automobile collision, although one witness did not examine the marks until the next morning, and the other until the second morning after the collision. The testimony was admitted in spite of the contention that the observations were too remote in time, because it was reasonably certain that the witnesses knew the place where the collision occurred.

In this case the investigating police officer went promptly to the scene of the accident and observed the skid marks. Because of the proximity of a pool of blood, where plaintiff had been injured by the taxicab, we think there was reasonable ground for the inference that the skid marks had been made by the taxicab, and therefore the trial judge did not err in admitting the testimony.

It was finally urged by plaintiff, in attempting to strike out the officer's testimony, that the statement made to him by the taxicab driver that the skid marks had been made by the taxicab was hearsay. Plaintiff brought out this statement on re-direct examination, and did not move to strike it out, but moved to strike out all the testimony about the skid marks. This motion was properly overruled.

Finding no reversible error in the admission of the challenged testimony, we must affirm the judgment entered in the Court below in favor of defendant.

*Judgment affirmed, with costs.*